Case 24-3586, Dreyon Wynn v. University of Toledo, Argument Not to Exceed 15 Minutes Post-Slide. Counsel, you may proceed for the appellant when ready. Good morning, Norman Abood on behalf of the appellant, Drey Wynn. I'll reserve five minutes. Thank you. Good morning. This case will demonstrate that it was decided on summary judgment and the appellant's case was obviously dismissed. The argument here today is that the lower court did not follow the proper summary judgment requirements of viewing the evidence most favorably for the appellant, did not, and then engaged in improper weighing of the evidence and improper credibility determinations. That is evident on the various claims that were brought in the case, whether it was the discriminatory termination claim or the discriminatory retaliatory arrest claim. Every claim that was brought was reviewed by the court and the court decided regardless of whether or not there was a sufficient showing of prima facie case of discrimination, there wasn't a sufficient showing to overcome the justification submitted by the appellee, the University of Toledo in this case. Can we just talk quickly about your First Amendment retaliation claim? I am not confident that you raised that claim in the district court. It seems to me that you raised a retaliation claim, but a Title VII retaliation claim and not a First Amendment claim, and now you've switched gears. If that's the reading that the court has, that's my fault for not conveying it properly. We are saying that it's an analogy to the Gonzalez First Amendment protection. The protected activity in this case is resisting discrimination, which is protected by Title VII. So you're bringing a Title VII claim. A Title VII claim. You haven't changed. I have not changed. So then why is Nieves relevant to your... I mean, that's a First Amendment retaliation claim. To show that there are exceptions to the general rule that if there's a probable cause for arrest, that that's the end of the story. That there is no overcoming that on a claim of pretext. Well, sure, but that would be if the adverse action were the arrest. But that's not what you claimed. No, the adverse action that we claimed... Excuse me, I'm sorry. No, please explain to me. The adverse action was the issuance of the warrant in the first instance. There was no... The argument is basically twofold on that issue. First of all, that there was no probable cause. If you look at the statute that he was charged under, it requires a deprivation, an intent to deprive the university of its property, the government of its property. The definition of deprive is set forth in the Ohio Revised Code. It's to permanently take or to keep something from the owner for so long that you basically used up its value. We're talking about a matter of weeks here following Mr. Wynn's actual end of his employment. But why would we need to import from First Amendment litigation a way to overcome pretext when Title VII provides a mechanism for determining whether or not the legitimate, non-discriminatory or non-retaliatory, in this case, reason that was advanced by the university was pretextual? We have a way to do that. We've got lots of case law about how an individual can overcome pretext. Why do we have to import Nieves and Gonzalez over in this context? I guess I have a follow-up for that. I realize that Gonzalez is very recent. Nieves is not, though. Is there any case in which that's even occurred? Where Title VII has been used as the basis for the protected activity instead of First Amendment? Where the Nieves exception has been used in a Title VII context? Off the top of my head, I can't cite you to one. Why should we do it? Because it shows that if there is a law that establishes a protected activity, in one instance a First Amendment, in this case Title VII, that if the court was convinced that there was probable cause, then we would look to use the exception established or enunciated, used in the Gonzalez case to show that even when there's probable cause, that isn't sufficient to block a finding of pretext. So this takes me back to my first question, and maybe you answered it, but why can't we just determine whether or not, I mean, the ultimate question is, is this the real reason? Is this the reason that the university, or the university police in this instance, even though none of the police themselves are named, but is this the reason that they actually undertook the action that you've said is the adverse action? Agreed, that's the ultimate question. Typically we look and see, hey, is there some evidence that this wasn't the real reason? Is there evidence that this is not enough, ordinarily, for them to take this action? I guess my point is that we've got a whole area of law that is developed around determining whether or not the university's actions were pretextual. I don't see any reason that we should bring in First Amendment doctrine to Title VII. Well, that actually takes me to the second point in my argument, which was raised very recently in a more concrete form based on the Hiddle dissent, which crystallized, quite frankly, the problem that we face as charging party, if you will, advocates. The McDonnell-Douglas framework of analysis, I analogize it to a tennis game. The ball keeps bouncing back and forth across the net. The ultimate end is once the employer puts up a justification, we are then in a position of having to disprove that. That puts a burden on us where the court, to overcome what we claim is the pretextual justification. That's the typical McDonnell-Douglas analysis. As the dissent from Justice Thomas, joined by Justice Gorsuch, points out, that puts basically an impermissible and unjustifiable burden. So I'm going to stop you. I agree that perhaps if we read tea leaves and we read dissents and listen to oral arguments and read Judge Newsom's great opinion from the 11th Circuit, there are lots of tea leaves saying maybe McDonnell-Douglas is not going to apply at summary judgment anymore. But we're not the tea leaf readers, right? The Supreme Court has told us you apply McDonnell-Douglas and you apply it at summary judgment, and there's a dissent that says maybe we should rethink this, but we're not rethinking that right now. I mean, one of us could write a concurrence or something, but a concurrence doesn't help you win. So we've got to use the framework we've got. And a dissent doesn't help you win. So under the McDonnell-Douglas framework, that's the one we've got to use. Even under the McDonnell-Douglas framework, I submit that the judge did not view the evidence most favorably for Mr. Wynn, that he made determinations of credibility and he weighed the evidence. All the summary judgment law consistently says, even in the memorandum opinion from the lower court, we're not to weigh the evidence, we're not to make decisions based on credibility, we're supposed to view the evidence most favorably for the non-movement. He didn't do that in this case. So even under the typical analysis, the facts in this case show that there was never an intent to deprive the university of its property. So this pretext, this claim that there was a warrant, first of all, the warrant was issued by the employer. And if you walk through the facts, which are in page IDs 1513 to 1516, and that's in the movement's initial brief, he gives a very long recitation of what happened here with regard to this arrest. Mr. Wynn was given a 90-day notice. He was contacted by the university by his boss. You've got to turn in your laptop. He wrote him back. He said, I'm still an employee. But he wasn't working. He was told not to work. He's still on the payroll. Right, but presumably the laptop is for working. Well, he also has other information, as he pointed out in his letter. And he said, I recognize this. He said it in writing. I recognize this is university property. I recognize I have to return it. Where is the intent to deprive under the statute? I'm sorry, you're getting close to out of time, and I just want to ask this question. Because, I mean, you make a good point. He was still employed up through I think it was like April 26th or 27th or something like that. He still didn't turn it in. And I get in briefing you say it turns out that he had COVID and he had some difficulties that caused even further delays. But the university didn't know that, did they? There's nothing that I saw in the factual recitation to say that the university knew that this is the reason he's continuing not to turn it in. And he went well beyond the end of his employment before he finally took it in to turn it in. So during that interim period, that's when the warrant issued, right? So how can, I mean, what evidence is there that they knew at that point? What happened was he was then, he was trying to reach the officer with whom he was communicating. The university had delegated the return of Mr. Wynn's property to him plus the recapture of the laptop to the university police department. He was in communication with them. There was actually a point in the middle of May where Mr. Wynn was, he was now living in Cleveland at the time, so he had to drive back and forth. He was bringing the, he brought the laptop back to Toledo, called the officer who didn't answer, but then called him back. It's in the briefs, in the recitation of facts, and said, I'll be out of town for a week. Let's set up another time. It was, I think, 10 days later that he was back in Toledo. He called. He said, I'm here. I've got the laptop. He brought it over. They received it. They inspected it. It was in perfect condition. After he turned it in, they arrested him on a Friday and laughed about it as they took him downtown on the idea that he probably wasn't going to be able to get out of jail until, you know, the following Monday. I see your time has expired. Do you have any more questions? Judge Balz? I just want to be clear that in your briefing, you really only talk about the arrest issue, not the promotion and firing. Is that right? We talk about the firing briefly. We focus primarily on what we felt was the most egregious act to bring to this Court's attention, which was this unlawful arrest.  I just wanted to make sure I hadn't missed it. Thank you.  Thank you, Judge Larson, and may it please the Court, Trane Robinson for the University of Toledo. The University had wholly legitimate, non-discriminatory, non-retaliatory reasons for all of its actions involving Mr. Wynn. It didn't promote him because stronger candidates applied. It terminated him because he wasn't doing a good job. And then it ultimately arrested him because he refused to return the University's laptop. On that issue, what about Mr. Abboud's point that he had been apparently, at least according to the facts, in pretty regular contact with the University about the return of this computer? It sounds like there was reason to believe that he was going to turn in the computer, yet the University went forward with seeking a warrant. My read of the facts is a bit different than that. There was a period in April, the key period, when his formal employment was coming to its conclusion, April 26th, when he went radio silent. So he was interacting back in February with the HR department when his boss, John Elliott, said, please return the laptop. He said, I'll do it at the end of the 90 days. Come April, the University detective, April 12th, reaches out and they communicate that day. And he says, I'll return it my last day. But on April 19th, the detective makes a phone call and it leaves a voicemail with no response. The same thing happens three more times leading up to April 26th. And during that whole period, which is the key period of the formal termination, there's radio silence. Once the termination ends, the police report is filed. A week later than that, the warrant issues. At this point, there's still radio silence. So it's not until later in May, not quite, but almost a month after his formal termination, that Mr. Winn gets back in touch with the detective. By then, the warrant's already issued. It was non-discretionary to execute it at that point. So that's how I would characterize the facts. The statement that there's non-discretionary to execute it, is that from state law or what is that? That sounded a little odd to me in the sense that in other contexts that I've been involved in. I understand, Judge Boggs. That was the testimony of the police chief, Newton, who said once the- The police, this is the Toledo police chief? The university. The university's police chief? Yes. Okay. Who said that once the warrant issued, we had no choice but to execute it. But you don't have a citation for a case or statute that says that? No, but I don't think the discretionary or mandatory nature of it is what's dispositive here. Because regardless, there's absolutely probable cause that he committed the offense of theft of government property. He possessed the laptop beyond the scope of his consent, and that's what Ohio law requires to trigger the offense. So there was probable cause. At that point, it's all discretionary whether to enforce the law or not. But he did commit the offense, and I would argue he committed the offense even before the end of his formal termination period. But that's also not important because regardless, he did possess it long after that. I agreed with- Is this a judicial warrant or an administrative warrant? They went to the court to get the warrant. They went to the court. So I would think those are an instruction from the court to execute the warrant. So that seems to me like they wouldn't have discretion. That's my understanding as well. I would say that there's- So first of all, when we're talking about the arrest, I think it's important to be clear about the analytical framework we're under. His whole argument in his appellate papers was about Nieves v. Bartlett, Gonzales v. Trevino. Those are First Amendment 1983 cases. This court has a case called Morris where it says the 1983 framework is inapplicable to Title VII retaliation claims. I don't think there's any need to import it over. We've got the burden-shifting framework from McDonnell Douglas to handle Title VII retaliation claims. I don't see any argumentation along those lines in his appellate papers. So it would be enough for the court to just say that issue is forfeited. But if it were to reach the issue, there's no pretext. The legitimate reason for the arrest was his refusal to return the laptop and his radio silence. And he doesn't come forward with any evidence to rebut that. Also, the intervening crime. I'm sorry to interrupt, but am I correct that the Nieves argument, I get that Gonzales came later, but the Nieves argument was not made in the briefing below? No. None of those cases were cited. He had a malicious prosecution claim in his complaints, but that was voluntarily dismissed at the pleading stage. And so there was an incite 1983, but that's where that type of claim comes from. We moved to dismiss, and he didn't oppose, and the district court dismissed that claim, along with the defamation claim, before the end of the pleading stage. And then no talk of any 1983 theory after that. He did argue a Title VII retaliation based on the arrest below. I just don't see that argument here, so I think it's forfeited. I'm happy to continue on with the arrest. I did want to address his termination as well, because I think the university had really important reasons for why it took that action, and I'm happy to give a few examples. He was unable to perform basic tasks like reporting to his boss the number of outstanding grievances with the labor unions with which he was responsible for. He couldn't report to his boss who the unionized employees were at the hospital. He had a lot of his disorganization and underperformance alienated key labor personnel like the hospital CEO and the police chief. And I can keep going. He was disorganized with paperwork. At one point he allowed an employee who had exhausted her paid and unpaid leave benefits to stay on the insurance plan, so that was needlessly exposing the university to the prospect of losing money, things of that nature. I can keep going, but maybe I'll pause there and just talk about those facts in the context of his pretext showing, because I think under this court's precedence, what I think is the Provincenzo analysis, there's three main ways to show pretext. No basis in fact that would be disputing whether these events occurred. He does not dispute that. And then the question becomes whether those were the genuine reasons or whether those were sufficient reasons. As to sufficiency for an at-will employee, he would have to show some kind of comparator evidence, and he tries that with one particular employee. Her name was Terry Kovacs. She was another director, so it was kind of his peer level, and she was terminated ultimately the same as Mr. Winn. His argument is that first she was demoted to a lower position before her termination for a short time. That doesn't make her an apples-to-apples comparator. There's two key differences that make her an inapt comparator. The first and most important is that there's testimony that Mr. Winn's performance was kind of unsalvageable, whereas hers wasn't quite so severe. And then also that comparator had spent 17 or more years at the university and so had amassed a lot of goodwill as well as institutional knowledge. So the comparator analysis doesn't work there. And that just leaves us with, I think, whether the university actually acted for the reasons that it said it did. And the answer is yes. The pretext showing the burden is back to Mr. Winn to rebut that, and all the presumptions fall away, unlike the prima facie stage. So Mr. Winn's got to show, with hard record evidence, that's what Civil Rule 56C requires. He's got to substantiate his assertions with citations to the record. As the district court explained at page 15, he doesn't bring out evidence and develop argumentation based on the summary judgment record. I'll talk about a few of the assertions he does make in his brief because I don't think they stand up in any event. At one point he says that the university fired all of the minority directors in the HR department. First of all, there is no substantiation for that. He doesn't cite the record. And so I don't think that's enough of a showing under cases like Alexander v. CareSource or Bender v. HECS. And then additionally, that's at heart an empirical claim. And when you make an empirical claim, you have to show statistically significant disparity, and you also have to dispel all of the normal reasons for termination. And he doesn't make any of those showings either. And just to give a little more fact context about that assertion, what happened was the University of Toledo overhauled the leadership of its HR department. And so the reason a few other minority HR workers were terminated is because they were in leadership, directorship roles. And it was a university president's, one of his key initiatives in his incoming president's administration, to modernize the HR department, which had been dysfunctional. So that's the reason for that. It's because people just so happen to be in roles of leadership in a dysfunctional department. I didn't hear him address the non-promotion, and I also didn't see a lot of argumentation about it in the brief. But suffice it to say that Ms. Savitsky, who was hired instead of him, was equally at worst or probably outqualified him. Critically, she had a law degree. And then the last point I wanted to make before I sit down is that the university has a live defense if the court were considering a remand. There was after-acquired evidence that Mr. Wynn worked two jobs at once. That flagrantly violated university policy. It's independent grounds for all of the adverse employment actions, or at least his termination. And so that would be an alt. And I think the key point there is that it forecloses any kind of relief because the Supreme Court's case about after-acquired evidence called McKesson v. Nashville Banner Publishing says that an independent ground for the adverse employment action forecloses reinstatement and front pay. That would just leave back pay, and Mr. Wynn continued to be paid all throughout the termination period, even after the after-acquired evidence. So there's no claim for back pay either. In short, there's no claim for relief. But the key point is he hasn't made an affirmative showing of pretext, which is ultimately just satisfying Title VII's because of element, causation. He hasn't made a jury question out of causation under Rule 56C. So Rule 56E says that the district court was quite correct to dismiss the case. If there aren't any other questions, I will have a seat. All right. Thank you very much for your argument. We'll hear rebuttal. Thank you. A couple of points. First of all, with regard to the warrant, the warrant itself was issued by the clerk of the Toledo Municipal Court based upon an affidavit from the university. There was essentially no finding by a review by an independent prosecutor for the city, for the county, and ultimately when that charge was given scrutiny by the city prosecutor once he was being arraigned and they had to decide whether to go forward, the charges were dropped. And the county prosecutor, because it was a felony, it would be typically referred over to the county prosecutor to take to a grand jury for further prosecution. He refused to take the case. So the only time that this warrant was subject to an independent review by somebody who wasn't conflicted, it was found to be no basis to go forward, no basis for this charge. That's because the charge doesn't hold up under the facts of the case. There was essentially no real probable cause. This is not a 1983 charge. It's a Title VII charge that we have brought. We are not suing the officer for an illegal act. We are suing the university for its discrimination in issuing the warrant in the first place based upon a charge for which there was no reasonable basis to believe that the offense had been committed. When you look at the facts of the case, the continual line of communication, it's a very brief period of time, from April to the actual return, in the midst of which the university officer says, I'll paraphrase, I don't know if he used the word don't worry about it, but he said, I won't be here for a week, I'll be on vacation. Get with me when you get back. How does that reflect the university's belief that this man is permanently depriving them of their property, illegally depriving them? The facts just don't substantiate it. With regard to the claim that we did not prove, bring in all the empirical evidence of the termination of the other minority directors at the University of Toledo, we made the allegation, we made it at the OCRC level. We incorporated in the complaint, as exhibits, the OCR findings of probable cause. There were findings of probable cause on both these claims, the improper discriminatory non-promotion, discriminatory termination, and the retaliatory arrest. The OCRC found probable cause. We incorporated those findings. I know they're not persuasive evidence, but they're something. Under the federal rules, the courts are allowed to at least take notice of it. We incorporated those, I think it was at paragraphs 43 to 45 of the complaint. For example, when the lower court talks about all the advocacy in opposition to discrimination that Mr. Wynn was involved in, first of all, that was his job. Second of all, that's a protected activity. The court tries to diminish the value of those actions by claiming it's new evidence. When I read that, there's no basis for saying that. It's reflected in the OCRC files that we've specifically referenced. This is a notice pleading the state of Ohio. I don't have to reflect every instance that he opposes discrimination in my complaint. I simply need to put them on notice as to what it is. The fact that they knew of every specific incident is reflected in the memorandum opinion because the judge quotes from it, and he says all he did was cut and paste from the position statement at the OCRC level. Well, clearly the university was on notice. Clearly this was not quote-unquote new evidence as the court characterizes it. So he was resisting discrimination, and when we brought that to the court, they tried to diminish it, and now when we allege that all the other minority directors were terminated, even that oral argument here, you notice he didn't deny it. He simply said we didn't prove that each and every one of them at the summary judgment stage had been terminated. With regard to the after-acquired evidence, it's a direct report. Wendy Davis, another case which will be coming up here shortly, and you'll hear more about that. She was his direct report. She knew about it. She approved it. What had happened, it's in the briefs, he was working in Cleveland. Their offices were shut down by COVID. He tried to communicate with them that he had taken another job. There was nobody to talk to. So it wasn't that he was deliberately trying to swindle one employer over another. Everything was fully disclosed, and his direct report knew and approved of it. I see my time is up. Yes. Thank you very much for your argument. Any more questions? All right. Thank you to both sides for your helpful arguments. We will take the case under advisement.